[No. 27181.   Department Two.   October 27, 1938.]

THE STATE OF WASHINGTON, *Respondent*, v. CLINTON
SMITH, *Appellant*.[1]

[1]Reported in 83 P. (2d) 749.

*J. W. Graham,* for appellant.

*Doane Brodie* and *Smith Troy,* for respondent.

BEALS, J.—During the month of October, 1937, the defendant, Clinton Smith, was by information charged with the crime of murder in the second degree. On his arraignment, defendant pleaded not guilty, and in due time was put upon his trial. The jury returned a verdict of guilty of the crime of manslaughter, and from a judgment upon this verdict and sentence imposed pursuant thereto, defendant has appealed.

Appellant assigns error upon the overruling of his motion for a directed verdict of not guilty; upon the denial of his motion for arrest of judgment, or in the alternative for a new trial; and upon the entry of judgment on the verdict. Appellant also assigns error upon the refusal of the trial court to instruct the jury that the evidence was not sufficient to support a verdict of guilty of murder in the second degree, and upon two instructions which the trial court gave to the jury. Error is also assigned upon the admission of certain evidence over appellant's objection.

During the fall of 1937, appellant was boarding at the home of Mrs. Nell Jones, in the town of Hoodsport, Mason county. On the afternoon of October 17th, appellant being then in the house, one Charles Carlson, who for several days had been indulging to excess in intoxicating liquor, and being still to some extent under the influence thereof, came to the house and asked Mrs. Jones if she knew where his automobile was, and also if she knew the whereabouts of one Edith Sheehan. Upon Mrs. Jones denying all knowledge as to the whereabouts of either the automobile

or Mrs. Sheehan, Carlson became abusive, used considerable vile language, and endeavored to force his way into the house. On the previous day, Carlson had become angry at Mrs. Jones, and while in the possession of a shotgun, had threatened her.

Appellant, who was working on the back porch at the time Carlson called at the Jones house, hearing the altercation, went through the house to ascertain what was going on. The evidence introduced by appellant indicated that both appellant and Mrs. Jones requested Carlson to leave and come back when he felt better, but that he attempted to force his way into the house and attempted to strike both Mrs. Jones and appellant. Carlson was a powerful man physically, fifty-six years of age, weighing about 180 pounds, and accustomed to work in the woods. Appellant was also a man of considerable strength.

Appellant forced Carlson from the doorway on to the porch, striking him twice, and when Carlson was on the porch, struck him a third blow, knocking him from the porch to the ground, the level of which was about fourteen inches below the porch floor. Appellant stepped down on to the ground, and the fight continued, appellant knocking Carlson down several times. Finally, Carlson was unable to rise, and appellant carried him to running water, where he washed Carlson's face, and then with the help of a neighbor placed him in appellant's car and took him to the office of a doctor, whence he was removed to the hospital at Shelton.

Carlson died four days later. Doctor Richter performed an autopsy and removed a portion of the brain. About four months after Carlson's funeral, his body was exhumed, and a second autopsy performed. It clearly appears from the evidence of the doctors that death resulted from extra-dural hemorrhage and con-

tusion of the brain. One crescent shaped wound was found on Carlson's forehead, which the doctors testified was probably the immediate cause of death, although it was also suggested that death might have been occasioned by the cumulated result of several severe blows upon the face and head. Doctor Richter testified that there were bruises upon Carlson's chest and legs, but that the blows which occasioned these could not have been fatal.

Appellant argues that the state failed to prove certain essential elements either of the crime charged or of manslaughter, in that the burden rested upon the state to prove that the act which resulted in Carlson's death was without excuse or justification, appellant contending that he did no more than defend himself and his landlady, Mrs. Jones, using no more force than was reasonably necessary. The information charged that appellant,

" . . . with a design to effect the death of one Charles Carlson, a human being, but without premeditation did then and there beat, cut, and wound the said Charles Carlson about his head with some instrument or instruments and in some way or manner to the prosecuting attorney unknown, and did mortally wound the said Charles Carlson," etc.

Appellant contends that the evidence shows that he struck Carlson only with his bare fists, and employed against him no weapon or instrument whatsoever.

While the evidence indicates that Carlson was a powerful man, appellant also was very strong. He testified that he was forty-one years old, and that he did not know his weight. He testified that he had been working on a fishing boat, and that his arms and shoulders were well developed. While he testified that he was not an experienced fighter, he stated that he did not like to get into trouble with anyone, because, with the muscular development he had, "some-

one is going to get hurt if I do." Appellant testified that he knocked Carlson down three or four times, and that he was at all times during the fight in great fear of receiving severe injury from Carlson. He did not testify, however, that Carlson ever succeeded in striking him.

Dorothy Austin, who was present in the Jones house at the time of the fight, testified that Carlson came to the door and endeavored to force his way into the house, using abusive language to Mrs. Jones; that the witness stepped out on the porch and observed Carlson on the ground, and appellant standing by; that Carlson arose and advanced toward appellant, taking a couple of steps "with his hands out to grab him;" and that appellant then knocked Carlson down a second time. The witness testified that while Carlson was lying on the ground, appellant kicked him a couple of times in the ribs, and told him to get up and fight some more, whereupon the witness went back into the house.

Mrs. Jones was also on the porch with Dorothy Austin. A woman living a short distance from the Jones house testified that at the time of the fight she heard a woman scream, and opened the door to see what was the matter. She saw the two men in the front yard, and two women in the doorway. She testified that she believed the woman who had screamed said, "Don't hit him again; you will kill him," but she did not know which of the women uttered the words.

Appellant testified that at the time of the fight he was wearing some light Congress slippers, with composition soles and rubber heels. There is evidence in the record to the effect that his shoes or slippers had leather soles and leather heels. Appellant denied that he kicked or stamped on Carlson at any time and although it appeared that some of the wounds on Carl-

son's face and head might have been the result of kicks or stamping, there was no direct evidence to the effect that appellant struck Carlson's head with his feet. The evidence strongly indicates that, at the time of the fight, Carlson was suffering from the effects of excessive drinking.

It is not contended that appellant had any previous grudge against Carlson or enmity towards him. There is no evidence that appellant in the fight used any means of offense other than his fists or, possibly, his feet. Appellant contends that, as no weapon was used, the blow upon Carlson's head, which the physicians testified was probably the cause of his death, could have resulted only from Carlson's striking his head upon a stone when he fell to the ground. While the doctors testified that Carlson had been struck terrific blows, and that they thought it doubtful that such blows could have been struck with the bare fist, no one attempted to testify positively as to just how the wounds had been received. Beyond question, Carlson received a terrific beating, as the result of which he died.

Appellant argues that his death occurred from accident or misadventure; that there was no proof of the use of a weapon or design on appellant's part to kill Carlson; that the evidence did not show that appellant ever became the aggressor; and that the evidence did show that appellant at first fought in defense of himself and Mrs. Jones. Of course, one attacked has the right to repel force with force, and a homicide committed in self-defense, without the use of excessive force, is excusable. We are convinced that, from the evidence, the jury might well have found that appellant used excessive force in the course of his combat with Carlson. In the first place, he knocked Carlson from the porch to the ground, and then stepped down

from the porch and knocked Carlson down from three to five times, tellling him while lying prone to get up and fight. In a statement made shortly after the fight, offered in evidence by the state and admitted without objection, appellant said:

"I hit him possibly seven or eight times. The main object was to knock him out. I was not wasting any time keeping him away from me."

Carlson was not armed, and the jury may have believed that appellant had several opportunities to refrain from further combat. He need not have stepped down from the porch; if, as he testified, he was afraid of bodily injury, he could have retired into the house, and certainly, when Carlson was lying prone on the ground, there was no reason why he should have even touched Carlson with his foot and told him to get up and fight. Appellant denied that he kicked Carlson, but the jury may have believed that he did. The jury saw appellant and were afforded an opportunity to estimate his ability to protect himself against such a man as Carlson, under all the circumstances shown by the evidence.

In his statement, appellant also said, in answer to the question, "When you hit Carlson, he was not protecting himself?" "No, but his arms were up in a way, but it really was not difficult to hit him." Appellant argues that the evidence does not support that portion of the information which alleges that appellant beat and wounded Carlson with some instrument.

The case was submitted to the jury upon the question of appellant's guilt or innocence of the crime of murder in the second degree and the included offense of manslaughter. We are convinced that the verdict is supported by the evidence, and that appellant's motions for judgment in his favor as matter of law were properly denied.

■ The court instructed the jury concerning the crime of murder in the second degree, and appellant assigns error upon the refusal of the trial court to instruct the jury that the evidence would not support a verdict of guilty of that crime. We find no error upon this phase of the case.

■ Appellant next argues that the court should have granted his motion for a new trial, because of the admission of certain evidence over his objection. As above stated, Doctor Richter, who attended Carlson, performed an autopsy immediately after the death, and removed a portion of the brain. The body was then regularly prepared for burial, and interred. About four months thereafter, the body was exhumed, and a second autopsy held, at which Doctor Richter was present, as were also three other doctors. At the time of the second autopsy, several photographs of the body were taken, and when the doctors who performed this second autopsy testified, several of these photographs were by the state offered in evidence. One showing the head of the deceased was admitted, over appellant's objection. Much of the testimony of the doctors concerning the second autopsy and what they found was also admitted over objections interposed by appellant's counsel.

Appellant argues that the evidence should not have been received, as the body was not in the condition it was at the time of death, or immediately thereafter; that a previous autopsy had been performed, a portion of the brain removed, fluid introduced into the body by the undertaker; and that the processes of deterioration had set in. Appellant also argues that the evidence and the photograph added nothing to the previous evidence, and that this evidence was highly prejudicial to appellant.

In this connection, Doctor D. H. Nickson, a specialist in pathology, testified, his qualifications being admitted, that a certain mark on the face of the deceased, indicating a wound which did not cause Carlson's death, could be better explained to the jury with the aid of the photograph of the head taken at the time of the second autopsy. The court, after considering the evidence of the doctors who performed the second autopsy, admitted this photograph in evidence, rejecting the others.

Appellant vigorously argues that the admission of this photograph in evidence constitutes reversible error, in that the photograph did not show conditions as they existed at the time of death, or shortly thereafter, and that the photograph did not throw any light on the cause of Carlson's death and tended to prejudice the jury against appellant.

In this connection, appellant cites the case of *Willis v. State*, 49 Tex. Crim. App. 139, 90 S. W. 1100, in which the court said:

"Sometimes pictures or photographs are competent evidence, but not always so . . . Where the photograph is not necessary to illustrate or make clear any question, but on the other hand would be calculated to prejudice or inflame the minds of the jury, . . . such evidence is not admissible. Sometimes in prosecutions for murder, the location of the wounds can be shown by photographs."

Two of the doctors who testified stated that, in their opinion, they could better explain to the jury the nature of the wounds inflicted upon Carlson by using the photograph in connection with their testimony than they could explain the nature of the wounds without the photograph. A question of similar nature was presented to this court in the case of *State v. Gaines*, 144 Wash. 446, 258 Pac. 508, where the court said:

"Doctor William J. Jones, in testifying, stated that he could better illustrate to the jury the nature and extent of the injuries by the use of the pictures. The exhibit in question shows the injury caused by the blow on the side of the face, the hole in the skull caused by the beating with a rock, and the injury to the neck caused by the choking. We cannot say that it was not necessary in proof of any material fact in the case. The fact, if it be a fact, that it was calculated to prejudice or inflame the minds of the jury would not be a sufficient objection to its admission, if it was otherwise competent."

Referring to this photograph, Doctor Richter testified that Carlson's features, as shown in the photograph, were recognizable, that the wounds on the head were recognizable, and that the situation could be demonstrated just as it was at the time the body was buried.

In 2 Wharton's Criminal Evidence (11th ed.), 1319, § 773, the rule is laid down as follows:

"It is generally stated that the locality or condition of the objects photographed must be the same as those that existed at the time of the commission of the crime. This is to be taken in a substantial sense, however, as a slight change in the conditions existing at the time a photograph was taken does not necessarily call for the exclusion of the photograph if it will not mislead, or tend to mislead, the jury. . . . Photographs showing the wounds of a deceased person are admissible, although they do not show or purport to show all of the wounds received which result from the commission of the homicide charged.

"Admissibility of photographs does not depend upon whether the objects they portray could be described in words, but rather on whether it would be useful to enable the witness better to describe, and the jury better to understand, the testimony concerned. Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it

may have a tendency to cause an influence beyond the strict limits for which it is admissible."

In the recent case of *State v. O'Donnell,* 195 Wash. 471, 81 P. (2d) 509, the question of the admissibility of photographs taken of the body of the victim of a homicide was considered. Some of the photographs were taken at the scene of the killing, but one had been taken at the morgue. It was held that, under our decisions, the trial court did not abuse its discretion in admitting the photograph.

In the case at bar, appellant was strenuously insisting that the blows which he struck were in self-defense. The question of appellant's guilt or innocence largely turned upon the degree of force which he used in the fight which resulted in Carlson's death. In this connection, the testimony of competent surgeons who examined Carlson's body was of considerable importance. Two of these witnesses testified that they could better explain to the jury the nature and extent of at least one wound by the use of the photograph which was received in evidence. Appellant had the full benefit of cross-examination of these witnesses. The state had the right to show that Carlson received wounds other than that which caused his death.

Necessarily, a broad discretion must be allowed to the trial court in ruling upon such questions. While such evidence should be used only with great caution, after careful consideration of the evidence bearing upon this phase of the case, we are convinced that it cannot be held that the trial court abused its discretion and committed reversible error in admitting the photograph.

■ The trial court instructed the jury that the words of the information, "some instrument or instruments and in some way or manner to the prosecuting attorney unknown," were broad enough to include the

use of hands, fists, shoes, or feet, or any other weapon or thing, if the jury believed beyond a reasonable doubt from all the evidence "that the use of any or all of those things had been established in this case." Appellant excepted to this instruction, upon the ground that hands and fists should not be classified as "instruments," and assigns error upon the giving of the instruction. Appellant argues that the evidence proved that no weapon was used; that the wound which occasioned death might have been caused by a fall; and that this wound could not have been inflicted with the bare fist.

In 13 R. C. L., title "Homicide," 745, appears the following:

"The fists may not, indeed, be regarded generally as a deadly weapon; but they become most deadly, by blows often repeated, long continued, and applied to vital and delicate parts of the body of a defenseless, unresisting man on the ground."

While it does not appear that appellant struck Carlson with his fist while the latter was lying on the ground, the jury may have believed that appellant did strike Carlson extremely violent blows in the face while the latter was practically incapable of defending himself. Doctor Richter, testifying as to Carlson's condition soon after the fight, stated that his entire face "was just simply a mass of blood clots," and was covered with minor cuts, which were all bleeding; that his lip on one side was cut clear through to the bone, and on the other side was cut, though not quite through; that there was a large crescent shaped gash on the left side of his forehead (the wound which injured the brain); that the nasal bone was smashed into half a dozen small pieces; and that there was an opening from this wound so that the doctor could stick his

finger down almost into the throat. The doctor testified that,

". . . if I hadn't known Mr. Carlson so well, I could not have recognized his features, because his face was tremendously swollen, and showing what we call hemorrhages under the skin."

While some of the medical testimony indicated that it was at least unusual that such a hard blow as that which Carlson received on his forehead could have been struck by a bare fist, appellant testified that his right hand was injured in the fight, the third knuckle having been knocked back out of place, and that his hand was cut. He also testified that his hand swelled, and that he had to soak it in a solution of Epsom salts. The jury were entitled to consider all the evidence, and we cannot say that the instruction complained of was without the issues, or gave the jury the right to bring in a finding not supported by the evidence.

█ In five separate instructions, the court correctly informed the jury as to the law concerning the right of self-defense. In several other instructions, the court correctly laid down the limitations of this right. Appellant excepted to one other instruction on this phase of the law applicable to the facts of the case, upon the ground that the right of one wrongfully attacked to use his best judgment at the time and "act as the exigencies of the case appeared to him to be necessary," was unduly restricted thereby. By another instruction, following the one complained of, the jury were told that, if they believed that appellant acted in good faith, believing that his acts were necessary in view of real or reasonably apparent danger of death or great bodily harm, and that appellant used no more force than was reasonably necessary, and desisted from the use of force as soon as he could safely do so, they must find appellant not guilty. The mat-

ter of appellant's right of self-defense was also fully and correctly explained in several other instructions.

In his exception to the instruction of which he complains, appellant claims too much, but assuming that the instruction under attack somewhat inadequately states the right of self-defense, the jury were so fully, clearly, and correctly advised as to the extent of this right in other instructions that it cannot be held that appellant was prejudiced by the instruction of which he complains.

We are in complete accord with the rule that a man, while he is occupying a place where he has a right to be, may defend himself from attack and resist an assault, even to the death, provided that his efforts are limited to proper defensive measures, and that he does not himself become an aggressor. The trial court fully, clearly, and correctly instructed the jury as to the law in connection with the right of self-defense, as applicable to the facts of the case at bar. The fact that one instruction was not as complete as it might have been does not constitute reversible error.

We are convinced that, under the evidence, the jury were justified in finding that appellant used excessive force upon the deceased and himself became the aggressor, inflicting upon Carlson an unmerciful beating, which caused the latter's death. It cannot be judicially determined that Carlson met his death by striking his head against a stone when knocked down by appellant, that appellant used no more force than was necessary to protect himself from attack and injury, or that appellant did not have a fair trial.

The judgment appealed from is accordingly affirmed.

STEINERT, C. J., MILLARD, GERAGHTY, and SIMPSON, JJ., concur.