Commonwealth *v.* Buzard, Appellant.

512

Argued September 25, 1950, Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

Vincent M. Casey, with him Casey, Power & Savage and Lavelle A. Wilson, for appellant.

William A. Sykes, District Attorney, with him George H. Kurtz and John E. Aikman, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 13, 1950:

R. Lawrence Buzard, the defendant, was convicted of murder in the second degree in the Court of Oyer & Terminer of Jefferson County. He has appealed to this Court.

The victim, Waldo Ditty, and defendant were in disagreement concerning the payment of a lumber bill of about $31.00 which defendant alleged that the victim had not paid. On the evening of September 13, 1949, the victim, 52 years of age, a small man of about 5 feet 4 inches, and weighing between 128 and 134 pounds, was met on the street in the Borough of Corsica by defendant, 59 years old, a large husky man, 6 feet tall and weighing about 175 pounds. Defendant asked the victim about the payment of the alleged indebtedness. The victim denied that he owed defendant any money, stating that lumber had been delivered to defendant by the victim in payment of the bill. The defendant then said that he would sue the victim. De-

fendant alleges that the victim laughed aloud, where-upon defendant said "If I thought that you were laughing at me I would knock your ears off." Defendant testified that his feelings were hurt by the laughter. He alleges that the victim, having crossed the street, returned and struck at defendant, knocking his glasses partly off his face. Defendant testified that he then replaced the glasses and struck the victim. (No witness observed this alleged occurrence). The victim fled. Defendant pursued him for about 15 feet. What happened thereafter is stated by Commonwealth witnesses and is summarized by the court below as follows: "William Love: 'It looked to me like he (the defendant) grabbed him (the deceased) by the neck; threw him down, jumped on top of him and started hitting him on both sides of the head. After Buzard hit him once he sort of went limp. You could hear the blows hit,' and that 'the defendant struck the deceased's head five or six times.'

"Thomas Armagost: 'That defendant hit the deceased on the head five or six times; that Buzard was hitting with piston-like blows with one hand and then with the other hand; that the blows sounded like a thud or something; after the kick the deceased scooted out on his face'.

"Dean Henry: 'That he saw the defendant strike the deceased on the head and face six to eight blows; that the defendant was swinging violently at the other fellow's head. That deceased's head went back and forth between blows. That the defendant did not strike the deceased more than two blows and kicked him once after Mr. Riggs had told the defendant to stop.' "

The court accurately stated in its opinion refusing a new trial: ". . . disinterested Commonwealth witnesses testified to having seen the defendant pursue the deceased, seize him from the rear, force his knees and

hands to the ground; hold him between his legs and strike him blows, alternating with the right and left hands, on the head and face. Some witnesses saw three blows, other witnesses saw four, five and six blows, respectively. Some witnesses said that the blows were violent and audible; that the blows continued until the deceased said he had enough and thereafter until William Riggs said, 'He has enough, stop.' " Other witnesses testified that the defendant struck but two blows and kicked the victim once after defendant was told to stop. After this the defendant arose from the victim's body and walked away about eight feet. The victim was then unconscious and died immediately thereafter, before he could be removed to a hospital.

We therefore have presented a situation where a large, powerful individual, without justifiable cause, was astride the back of a small, weak man who was prone and defenseless, and administered a beating with his fists with such violence and severity that the victim was killed.

Appellant vigorously contends that there is no evidence to support a verdict of murder in the second degree and that at most the crime amounted to involuntary manslaughter. With this we do not agree.

Murder is defined as an unlawful killing of another *with malice aforethought,* express or implied: *Commonwealth v. Drum,* 58 Pa. 9. The legislature has divided murder into two classifications, murder in the first degree and murder in the second degree. All murder perpetrated by poison or lying in wait, or any wilful, deliberate or premeditated murder or any murder which shall be committed in the perpetration of certain felonies, is murder in the first degree. Every other kind of murder is murder in the second degree: Act of 1939, June 24, P. L. 872, sec. 701, 18 PS 4701. As the killing was unlawful, we are required to examine the evidence

to ascertain whether the jury could find, beyond a reasonable doubt, that *malice,* in its legal sense, existed. Malice has been defined as not only a particular ill-will, but a hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty: *Commonwealth v. Drum,* supra. Malice would be present if the defendant had an intent to do the deceased great bodily harm: *Commonwealth v. Drum,* supra. It is malicious to intend injury such as to interfere seriously with health and comfort: *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125.

No deadly weapon, in the ordinary sense, was employed by defendant and, therefore, no *presumption* of an intent to kill can arise: *Commonwealth v. Guida,* 298 Pa. 370, 148 A. 501. However, the Commonwealth may show, and the jury is not precluded from finding, that malice existed even though a deadly weapon was not used. Malice may be found from the attending circumstances. Cf. *Commonwealth v. Edward McMillan,* 144 Pa. 610, 22 A. 1029; *Commonwealth v. Kluska,* 333 Pa. 65, 3 A. 2d 398. It is not *rebutted* by the absence of the use of a deadly weapon. Cf. *Commonwealth v. Guida,* supra. In the recent case of *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125, this Court stated, p. 300: "The size of the assailant, the manner in which the fists are used, the ferocity of the attack and its duration and the provocation are all relevant to the question of malice. See Com. v. Blakeley, 274 Pa. 100, 105, 117 A. 685; Com. v. Guida, 298 Pa. 370, 148 A. 501; Com. v. Lisowski, 274 Pa. 222, 117 A. 794. See State v. Smith, 196 Wash. 534, 83 P. 2d 749, 754, holding that the fists though not ordinarily a deadly weapon may become deadly by repeated and continued blows applied to vital and delicate parts of the body of the defenseless, unresisting victim."

Every death resulting from a fist fight does not constitute murder in the second degree. Conviction of

murder in the second degree requires clear evidence of the existence of malice.

There is abundant evidence of defendant's intent to do the victim great bodily harm. The testimony discloses a measure of depravity and hardness of heart, recklessness of consequences and a mind which imports malice: *Commonwealth v. Drum,* 58 Pa. 9; *Commonwealth v. Malone,* 354 Pa. 180, 47 A. 2d 445; *Commonwealth v. Dorazio,* supra.

Defendant contends that it was not proved that defendant killed the victim. This contention is based upon the fact that deceased's skull was not fractured, and also because the *brain* was not examined. It is maintained that there is no evidence from which to conclude that death was caused by the blows on the head. But the doctor who examined the body, and made an autopsy, testified that he examined the face and head externally, and opened the head and examined it. He also opened and examined the lungs and heart and made other examinations of the body. The doctor testified that, in his opinion, death was caused by hemorrhage and shock due to blows on the head and face. The jury could find that the blows by defendant caused the death of Waldo Ditty.

Defendant also claims trial error. He maintains that decedent's widow, when identifying her husband's cap, cried audibly before the jury and that it was error not to have granted counsel's motion for the withdrawal of a juror. The court, in its opinion refusing a new trial, stated that Mrs. Ditty did not cry or sob audibly at any time. We agree that defendant was not prejudiced by the court's refusal to withdraw a juror.

Defendant maintains that it was error to have admitted photographs of the dead body of victim. They were used for the purpose of corroborating testimony of the Commonwealth's eye witnesses. Admission or exclusion of such exhibits is a matter within the discre-

tion of the trial judge: *Commonwealth v. Ferry,* 326 Pa. 129, 191 A. 130; *Commonwealth v. Wentzel,* 360 Pa. 137, 61 A. 2d 309; *Commonwealth v. Davis,* 363 Pa. 91, 69 A. 2d 123. The evidence was admitted with cautionary instructions that the jury was not to be influenced or prejudiced in any manner concerning the defendant's guilt by them. The court did not abuse its discretion in this respect.

Defendant also contends that a statement made by him on the night of the crime shortly after Ditty was killed, but before he was arrested or charged with any crime and while being questioned by the police investigating the crime, was improperly admitted in evidence. We note that defendant does not contend that his statement was untrue or that he was coerced in making it. He objects because he was not informed before making the statement that Waldo Ditty was dead. He does not allege in what manner such knowledge would have affected the *truthfulness* of his statement. We therefore can see no error in admitting the statement. The prime concern in such a matter is the truthfulness of the statement or confession: *Commonwealth v. Spardute,* 278 Pa. 37, 122 A. 161; *Commonwealth v. Agoston,* 364 Pa. 464, 72 A. 2d 575. The statement was admitted with the trial judge's instruction that if the jury found that the statement was coerced or untruthful they must reject it. There is no merit in this contention.

Defendant was not permitted to introduce into evidence the return of view of the acting coroner. In it were the following words: "There was not sufficient evidence of unlawful act or undue means used and that an inquest was not necessary. Death resulted from brain injury and shock 30 minutes due to blows on head and face, cerebral hemorrhage following a fight." Defendant contended that his purpose was to use the return to contradict the testimony of the acting coroner. The acting coroner testified only to what he saw on

the face and body of the deceased. He did not testify as to the *cause of death*. Moreover, the witness was not a physician and was not competent to testify as to cause of death. There was no dispute as to the nature or extent of the wounds. Such an offer was incompetent and irrelevant. It could not therefore have contradicted the testimony of the acting coroner.

Defendant complains of the denial of his petition, after the conclusion of the trial, for the exhumation of the body and an additional autopsy. We agree with the court below that the application did not rest upon after discovered evidence. The application should have been made before the trial. Such evidence, even if obtainable, would only have gone to impeach the testimony of Dr. Dick, the Commonwealth's witness. No valid reason is given for defendant's delay in requesting such additional autopsy.

Defendant's other complaints as to errors in the court's charge are so devoid of merit that they need not be discussed. We have examined the charge and find it adequate and accurate. The evidence of malice on the part of this defendant being clear, he stands properly convicted and sentenced.

The judgment is affirmed and the record is remitted to the court below so that the sentence imposed may be carried out.