Commonwealth *v.* Gooslin, Appellant.

Argued January 17, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John E. Stively,* with him *Stively and Mitman,* for appellant.

*A. Alfred Delduco,* Assistant District Attorney, with him *Samuel J. Halpern,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 19, 1963:

The defendant, George Gooslin, was tried for murder of his wife, Sadie Gooslin. The jury returned a verdict of guilty of murder in the second degree. Defendant's motions in arrest of judgment and for a new trial were overruled and he was sentenced to pay a fine of $2,500, plus costs, and to serve not less than 10 or more than 20 years in the State Correctional Institution at Philadelphia, Pennsylvania. Thereafter, defendant appealed the judgment to this Court.

Defendant contends: (1) the trial Court erred in overruling his demurrer; (2) the evidence was insufficient to sustain his conviction and his motion in arrest of judgment should be granted; and (3) the trial Court erred in overruling his motion for a new trial because the verdict was against the weight of the evidence. Defendant places his main reliance on the second contention.

In *Commonwealth v. Burns,* 409 Pa. 619, 187 A. 2d 552, the Court said (page 633) : " 'The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged, i.e., the murder of Max Kravitz: Commonwealth v. Sauders, 390 Pa. 379,

134 A. 2d 890; Commonwealth v. Boden, 399 Pa. 298, 159 A. 2d 894; Commonwealth v. Homeyer, 373 Pa. 150, 94 A. 2d 743; Commonwealth ex rel. Garrison v. Burke, 378 Pa. 344, 106 A. 2d 587; Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820; Commonwealth v. Bolish, 381 Pa. 500, 113 A. 2d 464; Commonwealth v. Lowry, 374 Pa. 594, 98 A. 2d 733; Commonwealth v. Blanchard, 345 Pa. 289, 26 A. 2d 303; Commonwealth v. Bishop, 285 Pa. 49, 131 A. 657; Commonwealth v. Danz, 211 Pa. 507, 60 A. 1070.

" 'In Commonwealth v. Phillips, 372 Pa. 223, 93 A. 2d 455, the Court said (page 227) : "It has become customary for a defendant in his argument before an Appellate Court to base his claims and contentions upon his own testimony or that of his witnesses even after a jury has found him guilty. This, of course, is basic error. After a plea or verdict of guilty, 'we accept as true all of the Commonwealth's evidence upon which, if believed, the jury could have properly based its verdict: Com. v. Blanchard, 345 Pa. 289, 296, 26 A. 2d 303, 306 (1942). See also Com. v. Karmendi, 328 Pa. 321, 324, 195 A. 62, 63 (1937) ; Com. v. Watkins, 298 Pa. 165, 168, 148 A. 65, 66 (1929) ; Com. v. Carelli, 281 Pa. 602, 605, 127 A. 305, 306 (1925) ; Com. v. Priest, 272 Pa. 549, 550, 116 A. 403 (1922) ; Com. v. Diaco, 268 Pa. 305, 306, 11 A. 879, 880 (1920).' . . ." ' "

In *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861, the Court said (page 208) : " '. . . ". . . Proof by eye witnesses or direct evidence of the corpus delicti or of identity or of the commission by the defendant of the crime charged is not necessary. '. . . It is clearly settled that a man may be convicted on circumstantial evidence alone, and a criminal intent may be inferred by the jury from facts and circumstances which are of such a nature as to prove defendant's guilt beyond a reasonable doubt: Commonwealth v. Kloiber, 378 Pa. 412, 106 A. 2d 820; Commonwealth v. Homeyer, 373

Pa. 150, 94 A. 2d 743; Commonwealth v. Lowry, 374 Pa. 594, 600, 98 A. 2d 733; Commonwealth v. Danz, 211 Pa. 507, 60 A. 1070; Commonwealth v. Wentzel, 360 Pa. 137, 61 A. 2d 309': Commonwealth ex rel. Garrison v. Burke, 378 Pa. 344, 348, 106 A. 2d 587." ' See also to the same effect: Commonwealth v. Boden, 399 Pa. [298, 159 A. 2d 894]; Commonwealth v. Nasuti, 385 Pa. 436, 123 A. 2d 435; Commonwealth v. Carey, 368 Pa. 157, 82 A. 2d 240."

In *Commonwealth v. Bolish*, 381 Pa. 500, 113 A. 2d 464, the Court said (pages 510, 511) : "Murder in Pennsylvania was first authoritatively defined in the famous case of Commonwealth v. Drum, 58 Pa. 9, 15. 'Murder', Mr. Justice STEARNE aptly said, in Commonwealth v. Buzard, 365 Pa. 511, 515, 516, 76 A. 2d 394, 'is defined as an unlawful killing of another with malice aforethought, express or implied.' The legislature divided murder into two classifications, murder in the first degree and murder in the second degree; and provided that (1) all murder perpetrated by poison or lying in wait; or by any other kind of wilful, deliberate or premeditated killing, or any murder which shall be committed in the perpetration of or attempt to perpetrate certain specified felonies [arson, rape, robbery, burglary, or kidnapping], is murder in the first degree and (2) every other kind of murder is murder in the second degree: Act of June 24, 1939.*

"Malice express or implied is the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Legal malice may be inferred and found from the attending circumstances.

---

* P. L. 872, as amended, §701, 18 PS §4701.

"To summarize: If there was an unlawful killing with (legal) malice, express or implied, that will constitute murder even though there was no intent to injure or kill the particular person who was killed and even though his death was unintentional or accidental: cf. Commonwealth v. Almeida,* 362 Pa. 596, 68 A. 2d 595; Commonwealth v. Moyer and Commonwealth v. Byron,* 357 Pa. 181, 53 A. 2d 736; Commonwealth v. Guida, 341 Pa. 305, 19 A. 2d 98; Commonwealth v. McLaughlin, 293 Pa. 218, 142 A. 213; Commonwealth v. Robb, 284 Pa. 99, 130 A. 302; Commonwealth v. Lowry, 374 Pa. 594, 98 A. 2d 733; Commonwealth v. Buzard, 365 Pa. 511, 76 A. 2d 394; Commonwealth v. Dorazio, 365 Pa. 291, 74 A. 2d 125; Commonwealth v. Sterling, 314 Pa. 76, 170 A. 258; Commonwealth v. Lessner, 274 Pa. 108, 118 A. 24; Commonwealth v. Exler, 243 Pa. 155, 89 A. 968; Commonwealth v. Drum, 58 Pa. 9; 4 Blackstone, Commentaries 192-193; 40 C.J.S. §13 p. 857, §20 p. 866, §21 p. 868; Wharton, Homicide §2 p. 2, §92 p. 112 (3rd ed. 1907); Maurer, Pennsylvania Criminal Law: Murder §3582 p. 915 et seq., §3689 p. 953 et seq.; 1 Warren, Homicide §74 (Perm. ed. 1938); Clark & Marshall, Crimes §245 (4th ed. 1940)."

Defendant contends, expressly or impliedly, that his wife must have died from too much alcohol, or that someone else killed her. He does not contend and could not justifiably contend that if she died as a result of brutal beatings, as the Commonwealth's evidence proved, this would not amount to or constitute murder in the second degree: *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125, and cases supra.

We shall briefly summarize the circumstantial evidence produced by the Commonwealth upon which the

---

* Reversed on another point.

jury could justifiably have based its verdict that defendant had murdered his wife, Sadie Gooslin.

Sadie Gooslin died in the evening of August 12, 1960, between the hours of 8:30 and 10:30 p.m. Dr. Walter M. Levy, who performed an autopsy on August 13, 1960, testified (a) that the cause of death was bilateral hemothorax; (b) that Mrs. Gooslin had sustained complete fractures of the left 3d, 4th, 5th and 6th ribs and right 8th and 9th ribs; (c) that these fractures had penetrated the plural cavity housing the lungs and causing blood to flow into the cavity, which resulted in an 80% collapse of the lungs; (d) that Mrs. Gooslin suffered contused wounds over her entire body; (e) that her eyes were black, her lower lip was swollen and cut inside and her face was swollen; (f) that the muscles beneath the skin of the chest were swollen, puffed and full of bloody material; (g) that after she had sustained these injuries, she could only have moved or struggled a few feet; and (h) that she died within a few hours after the infliction of the above described injuries.

Although defendant and his wife resided in Chester County, Pennsylvania he worked in Wilmington, Delaware and came home only on weekends. For many months and especially for the month preceding Mrs. Gooslin's death, defendant fought and quarreled with his wife every weekend. At these times Mrs. Gooslin's body was badly battered and bruised and her eyes were constantly black and blue; and while this condition did not clear up during the week, it always was worse during and right after the weekend.

Betty Miller, a neighbor, testified that on December 19, 1959, she and her sister, Goldie Barbara Delp visited the Gooslin home and found Mrs. Gooslin upstairs in bed in a bloody condition. Goldie Delp testified that the defendant remarked after being asked to take his wife to the hospital "I ought to take her

and throw her over the dump." Mrs. Gooslin was subsequently taken to the hospital and examined by Dr. John Marlow. He testified that she was treated for swelling of the pelvic region, a bruise of the left eye and jaw and a tear-type laceration (1½ inches long) of the vulva.

Betty Miller further testified that on July 17, 1960 defendant and Mrs. Gooslin quarreled. Josephine Bolt, Mrs. Gooslin's daughter, testified that on Saturday evening, July 31, her mother appeared at her home in a beaten-up condition; her eyes were black and bloodshot and her legs were swollen. She stayed two days and nights and returned to her home with Josephine and Roy McCompsey. Roy McCompsey, a friend of the Gooslins, testified that Sadie said, "Josephine, don't leave me. You'll be sorry for it." The defendant's 15-year old son, Earmel Gooslin, testified that during the six weekends previous to Mrs. Gooslin's death his parents had quarreled on four of them and that during one of these quarrels he heard the sound of dishes breaking. Miss Mary Sheila Beirne, a third-year medical student, testified that on August 8 at 2 a.m. she treated Mrs. Gooslin at Jennersville Hospital for a scalp wound. Emanuel Ciaki, Mrs. Gooslin's halfbrother, saw the victim on Friday, August 12, between 5:30 and 6 a.m. and also saw her at 5 p.m. at which times both of her eyes were blackened.

On Friday, August 12, defendant returned from Wilmington about 4:30 or 5:30 p.m. Kenneth Bennett, who was living with the Gooslins, testified that while defendant was upstairs with his wife he heard three or four bangs on the floor. Shortly thereafter defendant and Mrs. Gooslin came downstairs and went into the kitchen. Bennett testified that he heard the sound of breaking glass coming from the kitchen and that the defendant told his wife "if she didn't start cooking, quit running around, he was going to bust the stove

up and throw it out." Bennett left the house and returned at 9 p.m. While Bennett was away from the house, defendant was alone with his wife except for their young children. Bennett retired about 10:00 p.m. Defendant woke Bennett about 2:30 a.m. and said "Something's wrong with Sadie." Bennett went with him to her room. Mrs. Gooslin's eyes were blackened, her face was terribly swollen and *her condition was much worse than ever before.* Defendant then told Bennett to get a doctor. Bennett left the house but shortly thereafter returned because he was unable to procure a physician. Defendant then told him to call the police, which he did.

Two State Police Officers arrived about 2:15 a.m. They summoned Dr. A. J. Torrello who arrived about 2:30 a.m. and made a preliminary examination of the body. He testified that Mrs. Gooslin had been dead from four to six hours; that she had been badly beaten up and that her *head, face, neck, arms and legs were covered with bruises.* Rigor mortis was complete. The pictures of the victim show her in a condition which was horrible. Defendant admitted that she was often in a beaten-up, black and blue condition, but said he had struck her only once and that was with his open hand two or three years before her death. Defendant denied that he had killed his wife and failed or was unable to explain how or why she was constantly in a "beaten-up" condition, after every weekend on which he was home. On cross-examination he implied that her death must have resulted from excessive use of alcohol, or that she was killed by someone else, or "done it herself."

The trial Judge thus accurately summarized the evidence: "Defendant came home only on weekends. He and his wife quarreled each time they met on each of the four weekends before her death. She was bruised and battered each weekend and the marks car-

ried through each succeeding week. *Defendant was at home with the victim at the time* [*of*] *her death** . . . . Her death was of traumatic origin and her body was brutally injured. She had received severe beatings on prior occasions when Defendant was home, particularly the two weekends immediately previous to that when she died and in December, 1959. When questioned about her death Defendant said once that she must *have done it herself* and *another time that she died from drinking alcohol.* Her blood tested negative for alcohol at the autopsy. Defendant denied killing his wife. He further denied striking her except for a single slap two or three years before. In cross-examination of Commonwealth witnesses his defense implied that either Bennett or one Cleo Miller caused the death, but he called no testimony in the defense to support that theory. Nor did Defendant when testifying try to explain his wife's injuries on the fatal weekend or at any previous time when he was home. . . ." Defendant's explanation as to the cause of his wife's death was so obviously false and fabricated, that it tended to further confirm his guilt.

We find no merit in any of defendant's contentions. After a careful review of the record we are of the opinion that the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant murdered his wife.

Judgment and sentence affirmed.

Mr. Justice MUSMANNO dissents.

---

* Italics, ours.