436 Pa. 532 (1970)
Commonwealth
v.
Commander, Appellant.
Supreme Court of Pennsylvania.
Argued September 30, 1969.
January 9, 1970.
*533 Before BELL, C.J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.
Joseph Michael Smith, for appellant.
James D. Crawford, Assistant District Attorney, with him Richard A. Sprague, First Assistant District Attorney, and Arlen Specter, District Attorney, for Commonwealth, appellee.
OPINION BY MR. CHIEF JUSTICE BELL, January 9, 1970:
The defendant, Robert Commander, was indicted for murder and voluntary manslaughter, and, on another indictment, for involuntary manslaughter. The district attorney elected to try defendant only on the murder indictment. Defendant, while represented by counsel, waived a jury trial after the district attorney certified that defendant's possible guilt would not rise *534 higher than murder in the second degree. While this was not binding on the Court  Com. ex rel. Hobbs v. Russell, 420 Pa. 1, 215 A. 2d 858; Com. ex rel. Ward v. Russell, 419 Pa. 240, 213 A. 2d 628; Commonwealth v. Lowry, 374 Pa. 594, 98 A. 2d 733; Com. ex rel. Johnson v. Rundle, 411 Pa. 497, 192 A. 2d 381  the trial Judge found defendant guilty of murder in the second degree, denied his motions for a new trial and for arrest of judgment, and imposed a sentence of from three to ten years' imprisonment. From this judgment of sentence, defendant took this appeal.
On May 10, 1968, at about 10 P.M., defendant, accompanied by James Barcley and an unnamed woman, entered a taproom in Philadelphia known as the Carolina Bar. Defendant was engaged in a conversation with the woman when Alton Page, the deceased, came over and slapped the woman on her buttocks. Page and defendant started arguing over Page's action and a fight broke out between them. After the bartender asked them to leave, they continued their fist fight on the sidewalk in front of the barroom. After the fight was broken up by the patrons of the bar, Page announced that he was going home to get a "shiv," which witnesses testified was a slang term for a knife. Barcley, who was in the barroom during the fight, testified that he did not see a weapon on the person of either man.
Page and his common-law wife, Thelma Page, then returned to their home, but only remained there for about ten or fifteen minutes. They then left for the 918 Bar, which is two blocks from the Carolina Bar. When they arrived at the 918 Bar, Page ordered a couple of beers and Mrs. Page went to the ladies' room. Page was seated on the first stool at the bar with his back to the door, drinking a bottle of beer, when defendant appeared at the door.
According to the evidence, when defendant appeared at the door, Page made a motion "like he was going to *535 his sweater" and within a few seconds, defendant, while standing only five feet away from Page, fired the fatal shot into a vital part of Page's body. There is conflicting testimony as to whether Page actually pulled out a knife, either when defendant appeared at the door or when he put his hand in or near his sweater. John Carroll, who was seated a couple of bar stools from Page, testified that he saw defendant enter the bar and Page reach under his sweater, but he did not see him pull out a knife. Barcley, an eyewitness to the fight at the Carolina Bar, testified that he went to the 918 Bar only after the shooting, and therefore did not see the killing. William Christine, a professional investigator who was appointed by the Court for the defendant, testified that he interviewed both Carroll and Barcley prior to the trial, and both told him that they had seen Page pull out a knife before defendant shot him.[*] The lower Court, sitting as the trier of fact, resolved this conflict of testimony in favor of the Commonwealth and relied on the direct testimony given in Court by Carroll and Barcley.
The testimony established, we repeat, that there was at least five feet separating defendant and Page, and that defendant had his back to the open doorway. There was no evidence that Page ever got off the bar stool. Equally, if not more important, the lower Court found that Page was not facing the defendant when defendant shot him, but was only turned half-way around "since the bullet entered his back in his right loin or flank,[**] slightly inward from and above his hip *536 bone, then coursing right-to-left through and across his abdomen, piercing several vital organs."
There was testimony that Page customarily carried some kind of a knife, but Mrs. Page testified that he did not have one on the night of the murder. Carroll, who assisted Mrs. Page by driving Page to the hospital, testified that he did not see a knife in Page's possession or on the floor after the shooting. The Commonwealth and defense counsel stipulated that no knife was found by the police in a thorough search (a) of the scene and (b) of Page's clothing, and (c) of the hospital where Page was taken, or (d) at the morgue.
Defendant makes two contentions in this appeal: (1) There was not sufficient evidence to sustain a verdict and conviction of second-degree murder because of lack of proof (a) that he killed Page with malice aforethought and (b) that the killing was not in self-defense; and (2) that we should abrogate and change the rule in Pennsylvania that a prior inconsistent statement of a witness may be used only to impeach the witness, and may not be used as substantive evidence on the basic issue at trial.

Sufficiency of Evidence To Prove Malice Aforethought
In Commonwealth v. Gooslin, 410 Pa. 285, 189 A. 2d 157, the Court reiterated the oft-repeated definition of murder (pages 288-289): "`Murder in Pennsylvania was first authoritatively defined in the famous case of Commonwealth v. Drum, 58 Pa. 9, 15. "Murder", Mr. Justice STEARNE aptly said, in Commonwealth v. Buzard, 365 Pa. 511, 515, 516, 76 A. 2d 394, "is defined as an unlawful killing of another with malice aforethought, express or implied." The legislature divided murder into two classifications, murder in the first degree and murder in the second degree; and provided *537 that (1) all murder perpetrated by poison or lying in wait; or by any other kind of wilful, deliberate or premeditated killing, or any murder which shall be committed in the perpetration of or attempt to perpetrate certain specified felonies [arson, rape, robbery, burglary, or kidnapping], is murder in the first degree and (2) every other kind of murder is murder in the second degree: Act of June 24, 1939 [P.L. 872, as amended, § 701, 18 P.S. § 4701].
"`Malice express or implied is the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Legal malice may be inferred and found from the attending circumstances. [Accord: Commonwealth v. Chermansky, 430 Pa. 170, 242 A. 2d 237; Commonwealth v. Lawrence, 428 Pa. 188, 236 A. 2d 768; Commonwealth v. Carroll, 412 Pa. 525, 194 A. 2d 911.]
"`To summarize: If there was an unlawful killing with (legal) malice, express or implied, that will constitute murder even though there was no intent to injure or kill the particular person who was killed and even though his death was unintentional or accidental: [citing thirteen Supreme Court of Pennsylvania cases]; 4 Blackstone, Commentaries 192-193; 40 C.J.S. § 13 p. 857, § 20 p. 866, § 21 p. 868; Wharton, Homicide § 2 p. 2, § 92 p. 112 (3rd ed. 1907); Maurer, Pennsylvania Criminal Law: Murder § 3582 p. 915 et seq., § 3689 p. 953 et seq.; I Warren, Homicide § 74 (Perm. ed. 1938); Clark & Marshall, Crimes § 245 (4th ed. 1940).'" Accord: Commonwealth v. Carroll, 412 Pa., supra (page 530); Commonwealth v. Finnie, 415 Pa. 166, 170, 202 A. 2d 85; Commonwealth v. Ahearn, 421 Pa. 311, 317, 218 A. 2d 561; Commonwealth v. Lawrence, 428 Pa., supra (at pages 193-194).
*538 The test for the sufficiency of evidence to support a murder conviction is likewise well settled. In Commonwealth v. Frye, 433 Pa. 473, 252 A. 2d 580, the Court affirmed a conviction of murder, and said (page 481): "It is hornbook law that the test of the sufficiency of the evidence  irrespective of whether it is direct or circumstantial, or both  is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. Commonwealth v. Finnie, 415 Pa. 166, 202 A. 2d 85; Commonwealth v. Burns, 409 Pa. 619, 634, 187 A. 2d 552; Commonwealth v. Kravitz, 400 Pa. 198, 161 A. 2d 861; Commonwealth v. Williams, 432 Pa. 557, 248 A. 2d 301 (1968)." See also, Commonwealth v. Terenda, 433 Pa. 519, 252 A. 2d 635; Commonwealth v. Lawrence, 428 Pa., supra; Commonwealth v. Tabb, 417 Pa. 13, 16, 207 A. 2d 884.
In Commonwealth v. Finnie, 415 Pa., supra, we said (pages 171-172): "`In Commonwealth v. Tyrrell, 405 Pa. 210, 174 A. 2d 852, the Court said (pages 212-213): "The essential difference in a non-felony murder-killing between murder in the first degree and murder in the second degree is that murder in the first degree requires a specific intent to take the life of another human being: Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Dorazio, 365 Pa., supra; Commonwealth v. Malone, 354 Pa., supra; Commonwealth v. Chapman, 359 Pa. 164, 58 A. 2d 433; Commonwealth v. Jones, 355 Pa. 522, 50 A. 2d 317; Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823."
"`The specific intent to kill which is necessary to constitute in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with *539 all reasonable inferences therefrom, and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being: Commonwealth v. Tyrrell, 405 Pa., supra; Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65; Commonwealth v. Nelson, 398 Pa. 359, 152 A. 2d 913; Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Heller, 369 Pa. 457, 87 A. 2d 287; Commonwealth v. Jones, 355 Pa. 522, 50 A. 2d 317.'"
With these important legal principles and standards to guide and govern us, we turn to defendant's motion (a) in arrest of judgment and (b) for a new trial. Appellant-defendant argues that, because of the conflict in the testimony and the pretrial statements of Carroll and Barcley, there is insufficient evidence to prove beyond a reasonable doubt that he killed Page with malice aforethought. Considering the evidence in the light most favorable to the Commonwealth, as we must, there is abundant evidence to infer malice, and appellant's contention on this point is utterly devoid of merit.

Self-Defense
Appellant-defendant next contends that there was sufficient testimony to establish self-defense as a complete defense to the murder indictment and, for this additional reason, his motion in arrest of judgment should be granted.
The principle of self-defense is clearly enunciated and thoroughly reviewed in Commonwealth v. Lawrence, 428 Pa., supra (pages 192-193): "One is legally excused from taking another's life if it is necessary to do so in order to prevent a felony such as sodomy attempted by force or surprise. See Commonwealth v. Emmons, 157 Pa. Superior Ct. 495, 43 A. 2d 568 (1945); 40 C.J.S. Homicide § 101 (1944). One is also legally excused if he takes another's life where it is *540 necessary to do so in order to protect his own life or to save himself from great bodily harm or under circumstances reasonably giving rise to fear of death or great bodily harm. See Commonwealth v. Capalla, 322 Pa. 200, 185 A. 203 (1936), and Commonwealth v. Collazo, 407 Pa. 494, 180 A. 2d 903 (1962). And where one free from fault in bringing on the difficulty is dangerously assaulted in his own dwelling by one not a member of the household, he need not retreat, but may stand his ground and meet deadly force with deadly force to save his own life or to protect himself from great bodily harm, Commonwealth v. Wilkes, 414 Pa. 246, 199 A. 2d 411 (1964); Commonwealth v. Fraser, 369 Pa. 273, 85 A. 2d 126 (1952). However, this is not the rule in Pennsylvania where one is attacked outside of his own dwelling. Under such circumstances, the controlling rule is enunciated in Commonwealth v. Collazo, supra, at 501-502, 180 A. 2d at 907, wherein we stated, quoting from Commonwealth v. Breyessee, 160 Pa. 451, 456, 28 A. 824, 825 (1894): `Life may be lawfully taken in self-defense; but it must appear that he who takes it was in imminent danger of death or great bodily harm and that no other way of escape from the danger was open to him. It is the duty of one who is assailed to flee, if flight is possible; and it is only when he is persuaded that he must suffer death or grievous bodily harm at the hands of his assailant, or take the life of his assailant that he may save his own, that he can justify his act as done in self-defense.' See also, Commonwealth v. Mitchka, 209 Pa. 274, 58 A. 474 (1904); Commonwealth v. McKwayne, 221 Pa. 449, 70 A. 809 (1908)."
Appellant relies on the testimony that Page had been known for carrying a knife, and that their prior fight less than an hour before ended with Page hurling threats at him. He further relies on the testimony that as he appeared at the door of the 918 Bar, Page made *541 a motion for his waist, where a weapon is ordinarily carried. For each of several reasons hereinafter discussed, we find absolutely no merit in this contention.
In Commonwealth v. Wilkes, 414 Pa., supra, the Court said (pages 249-250): "Further, self-defense is an affirmative defense and the burden of proving it is upon him who asserts it by the preponderance of the evidence: Commonwealth v. Burns, 367 Pa. 260, 80 A. 2d 746 (1951), and Commonwealth v. Noble, 371 Pa. 138, 88 A. 2d 760 (1952). This burden never shifts. The Commonwealth is under no obligation to prove that the defendant did not kill in self-defense. See, Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823 (1935), and Commonwealth v. Updegrove, 413 Pa. 599, 198 A. 2d 534 (1964)." Whether or not defendant has met his burden of proof is strictly for the finder of fact to decide. See, Commonwealth v. Lawrence, 428 Pa., supra.
Defendant did not prove by a preponderance of the evidence that Page had a knife and was threatening to use it. To the contrary, Carroll and Barcley each testified in Court that he never saw the deceased pull out a knife, and Page's wife testified that he did not have a knife on him on the night in question. Moreover, it was stipulated that no knife was ever found anywhere, after a thorough search by the police.
From a review of all the evidence, we agree with the lower Court that the appellant has clearly failed to establish by a preponderance of the evidence the essential elements of self-defense, or any legal justification for this homicide.

Prior Inconsistent Statements
The appellant urges this Court to change the long-established rule in Pennsylvania that prior inconsistent statements are admissible not as substantive evidence, *542 but only for the purpose of impeachment. This question was not raised in the Court below and therefore will not be considered on appeal.[*]Commonwealth v. Scoleri, 432 Pa. 571, 579, 248 A. 2d 295; Commonwealth v. Payton, 431 Pa. 105, 107, 244 A. 2d 644; Commonwealth ex rel. Bell v. Rundle, 420 Pa. 127, 131, 216 A. 2d 57, cert. denied, 384 U.S. 966.
Judgment of sentence affirmed.
Mr. Justice ROBERTS concurs in the result.
NOTES
[*] Christine testified that Carroll had told him that he saw Page draw from his belt a dagger eight to ten inches long and hold it in front of him before the shot was fired. Barcley's purported statement to Christine was that from across the street he could see, through the open door of the 918 Bar, Page pull what looked to be a knife, something shining, just before the shot was fired.
[**] Italics throughout, ours.
[*] The writer of this Opinion, speaking for himself, finds no persuasive reason to change the long and well-established (by over a dozen cases) law of Pennsylvania concerning prior inconsistent statements, which we have recently reiterated. Wilson v. Pa. R.R. Co., 421 Pa. 419, 219 A. 2d 666; Bizich v. Sears, Roebuck & Co., 391 Pa. 640, 139 A. 2d 663; Dampman v. Pennsylvania R.R. Co., 166 Pa. 520, 31 A. 244; Commonwealth v. Deitrick, 221 Pa. 7, 70 A. 275; Scheer v. Melville, 279 Pa. 401, 123 A. 853; Zavodnick v. A. Rose & Son, 297 Pa. 86, 146 A. 455; Harrah v. Montour Railroad Co., 321 Pa. 526, 184 A. 666; Stiegelmann, Exrs. v. Ackman, 351 Pa. 592, 41 A. 2d 679; Kunkel v. Vogt, 354 Pa. 279, 47 A. 2d 195; Dincher v. Great Atlantic & Pacific Tea Company, 356 Pa. 151, 51 A. 2d 710; Commonwealth v. Blose, 160 Pa. Superior Ct. 165, 50 A. 2d 742; Herr v. Erb, 163 Pa. Superior Ct. 430, 62 A. 2d 75. See, also, Wigmore on Evidence, III, Third Edition, § 1018; Henry, Penna. Evidence, § 801 (4th Ed. 1953).