Commonwealth *v.* Morales, Appellant.

Submitted January 5, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BAR-BIERI, JJ.

*Frederick S. Wolf*, and *Beaver, Wolf and Brandt*, for appellant.

*George E. Christianson*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 12, 1971:

Antonio Morales appeals from the judgment of sentence imposed by the court below following his conviction by a jury in Lebanon County of murder in the second degree.

From the Commonwealth's evidence at trial, the jury was warranted in finding the following facts.

After leaving a party, Morales and William Rivera proceeded to the former's residence and engaged in a game of dice in a room on the second floor. Ernesto Rivera, William's brother, who accompanied them did not play. After losing some money, Morales became "perturbed" and hit William Rivera in the face. When the latter refused to play any further, despite the in-

sistence of Morales that the game continue, Morales left the room and closed the door behind him. The Riveras then decided to leave the house in order to avoid further trouble.

As Ernesto Rivera started towards the stairs leading to the first floor, Morales came out of a second-floor bedroom and followed him downstairs with a revolver in his hand. When Ernesto tried to unlock the front door, Morales grabbed him by the neck and told him *not* to leave. When William came downstairs and walked towards the door, Morales told him he had to resume the dice game or give him his money back. When this demand was refused, Morales stepped back, loaded two bullets into the revolver and fired one into William's chest. As the victim's body twisted around, Morales shot a second bullet into his back. This second missile pierced the tip of the heart and other vital internal organs causing almost instantaneous death.

The Commonwealth's case depended in substantial part upon the testimony of Ernesto Rivera, whose description of the fatal occurrence differed materially from that given by Morales during his trial testimony. The latter testified that he shot in self-defense and only after both of the Riveras had threatened his life with knives which they were holding in their hands. It is now urged that Ernesto's trial testimony was "too contradictory and fantastic to be credible" and that justice requires a retrial. After reading the entire trial record, we cannot agree. The issue was purely factual and was presented to the jury in fair and clear instructions by the trial court. It was for the jury to determine credibility, and we are not persuaded that Ernesto's testimony was of such a quality as to warrant the conclusion it was "incredible."

While admitting that the trial testimony was sufficient to warrant a jury finding of murder in the first

degree, Morales argues that the evidence does not support a verdict of second degree murder. Again, we disagree.

In the first place this position is self-contradictory. If the evidence were sufficient to warrant the jury finding guilt of murder in the first degree, it necessarily follows that it was sufficient to establish guilt of murder in the second degree. Moreover, Morales testified, inter alia, that when he fired the shots he did not intend to kill William Rivera. The jury may have believed this testimony (even though to us it appears incredible) and have concluded that, while Morales acted without a specific intent to kill, he did act with malice aforethought. If so, the killing was that of murder in the second degree. Cf. *Commonwealth v. Ingram*, 440 Pa. 239, 270 A. 2d 190 (1970), and *Commonwealth v. Commander*, 436 Pa. 532, 260 A. 2d 773 (1970). A jury may believe one portion of a witness's testimony and still reject, as untruthful, the remainder thereof. *Commonwealth v. Rankin*, 441 Pa. 401, 272 A. 2d 886 (1971).

We have carefully considered each and every assignment of error asserted in connection with the trial proceedings and conclude they are devoid of merit. However, another issue is raised which merits discussion.

After the jury's verdict, timely motions were filed on behalf of Morales for a new trial, and in arrest of judgment. These motions were subsequently withdrawn. Later, on August 19, 1969, Morales appeared before the court for sentencing with his trial counsel who made an extended plea for mercy. After considering all the facts of record and counsel's plea, the court imposed a prison sentence of 5 to 20 years imprisonment. Later, in post-conviction relief proceedings it was determined that Morales had not knowingly

waived his right to appeal and, as a result, the trial court "reinstated" the post-trial motions and "set aside" the sentence previously imposed "pending disposition of the motions." The motions were argued at a later date after which the court entered the following order: "And Now, to wit, June 26, A.D., 1970, the defendant's nunc pro tunc motions for a new trial and in arrest of judgment are refused. Furthermore, our sentence of August 19, 1969, is hereby restored."

Since neither the defendant nor his counsel were present when the above related order was entered on June 26, 1970, it is argued that this violated Morales' rights under the Sixth Amendment.

It is now clear that the time of sentencing is a "critical stage" in criminal proceedings, and it is constitutionally required that both the defendant and his counsel be present. See *Commonwealth ex rel. Mullins v. Maroney*, 428 Pa. 195, 236 A. 2d 781 (1968). The order complained of herein, however, was not the "sentencing", but merely a restoration of the sentence previously imposed after careful consideration.

Judgment affirmed.